ALEXANDER EUSTON, Appellant, v. S. C. EDGAR.

**Division One, November 27, 1907.**

1. **FRAUDULENT SCHEME: Combination in Restraint of Trade: Foreign Corporation.** A combination or agreement in restraint of trade, made in this State and illegal here, cannot be invested with legality by the formation of a corporation under the laws of another State to be used as a tool or instrument for carrying out the illegal agreement.

2. ———: ———: ———: **Agreement Between Smelters.** An agreement between the owners of zinc furnaces or smelters, all interested in the manufacture and sale of smelter and desiring for their own pecuniary profit to advance the market price of their product, by which they came together in Missouri and formed an Illinois corporation to have as its stockholders the owners of said furnaces in Illinois, Kansas and Mis-

souri, and to which all the concerns going into the scheme are to sell their product at an agreed scale, to be sold by it, the profits to go back to said concerns in the way of dividends, the purpose being to control the product in the market, avoid competition among themselves, and thereby increase the price, is the very combination denounced by the statute, and is illegal. And being made in Missouri and to the extent of the Missouri concerns to be executed here, will be held to be void. And the fact that the laws of Illinois do not make such an agreement void, or if they do that fact cannot be adjudged because the statutes of that State were not introduced in evidence, will not prevent the courts of this State from adjudging it to be illegal; for the formation of the Illinois corporation to be the instrument of the parties to carry out their scheme, did not make their agreement an Illinois contract.

3. ———:'———: ———: **Enforcing Loan.** If the scheme out of which plaintiff's claim arises and in which he participated was in violation of law, he cannot enforce his claim in a court of law, even though his claim be for a loan of money to the corporation formed to carry out the illegal scheme.

4. **CORPORATION: Liability of Stockholder: Money Loaned.** Under the laws of Illinois a subscriber for the capital stock of a corporation is liable to it and to its creditors for the unpaid face value of the stock. A corporation was formed by the owners of smelter furnaces to market the combined product of all; the products of each were to be sold to it at an agreed price. And in consideration of a written contract by each making the output of his smelter subject to the order of the corporation for two years it was authorized to issue to him a certain number of the shares of its capital stock, the number to be in proportion to the value of the product of his zinc furnace. Both plaintiff and defendant participated in this arrangement, and stock was issued to each with no other payment therefor than the contracts. Plaintiff loaned the company $100,000 for two years, without interest, to be used in paying the various stockholders for their products at the agreed scale price, and for doing that the company issued him nearly one-fourth the entire stock. *Held,* that plaintiff was not in the attitude of a stranger or creditor without notice, but a party to the plan of the corporate organization by which it was agreed that defendant should have his stock in consideration of the valuable contract he made to deliver to the corporation the output of his plant, and plaintiff cannot recover from defendant the amount of his unpaid judgment against the corporation, on the theory that defendant is liable because he has not paid for his stock, for the stock was paid for by his contract.

5. ———: ———: ———: Contemporaneous Interpretation of
Contract: Payment by Others.. Evidence that other stockhold-
ers had paid their share of the corporation's debt to plaintiff
should have been excluded. When the business is all ended
and only settlements remain to be made such interpretation
by the other stockholders as to whether the contract was that
the stock was to be paid for in money or by the contracts, is
a mere matter of opinion; especially, where, as in this case,
there was an apparent reason why the others might have
paid which did not apply to defendant.

Appeal from St. Louis City Circuit Court.—*Hon. John
A. Blevins,* Judge.

AFFIRMED.

*Boyle & Priest, Edward T. Miller* and *T. E.
Francis* for appellant.

(1) A stockholder of an Illinois. corporation is
liable to a creditor thereof to the amount of the unpaid
balance due on his shares. R. S. Ills. 1895, chap. 32,
sec. 8; Coleman v. Howe, 154 Ill. 458; Alling v. Wenzell,
133 Ill. 264; Bates v. Gt. West. Del. Co., 134 Ill. 536.
(2) The rights of stockholders and creditors of a cor-
poration must be adjudicated according to the statutes
and jurisprudence of the State which creates the cor-
poration. Glenn v. Liggett, 135 U. S. 533; Allen v.
Fairbanks, 45 Fed. 445. (3) The court erred in giv-
ing defendant's instruction 3-d, in modifying plaintiff's
instructions 1 and 4, and in refusing plaintiff's instruc-
tion 8. Authorities cited under point I; Sprigg v.
Nat. Bank, 172 Ill. 149. (4) Plaintiff's knowledge that
defendant had not paid for his stock at the time plain-
tiff became a creditor of the company would not estop
him from proceeding against defendant. Sprigg v.
Nat. Bank, 172 Ill. 149. (5) This being a case in
equity, this court will review the entire record, and
will treat the case as if it had been originated here

and was to be heard for the first time. Lins v. Lenhardt, 127 Mo. 271; Robertson v. Shepherd, 165 Mo. 360. (6) The finding and judgment of the court is against the evidence and the weight of the evidence, and we submit that, on the whole record, the finding and judgment should have been for the plaintiff.

*Judson & Green* for respondent.

(1) While mere knowledge that a stock subscription has not been paid up in full will not estop a creditor who has extended credit while possessed of such knowledge from collecting his debts from a stockholder, yet an agreement between the subscribers that the capital stock is to be paid up in a certain manner does estop any creditor who was a party to such agreement from asserting that a subscriber who pays in the manner specified in the agreement is not thereby discharged from all further liability. Our courts have expressly so held: Woolfolk v. January, 131 Mo. 620; Carp v. Chipley, 73 Mo. App. 35; 3 Thompson on Corporations, 3008. (2) The organization of the Missouri Metal Company induced and promoted by the plaintiff was avowedly for an illegal purpose: the suppression of competition between zinc producers of Missouri, Illinois and Kansas, who were parties to the agreement. It was therefore violative of public policy and statutes of Missouri, as well as of Illinois, and of the United States. Morawetz on Corp., sec. 758; Laws 1889, p. 96; Laws 1891, p. 186; Laws of Illinois, 1891, p. 206; Laws of Illinois, 1893, p. 192; 2 United States Statutes at Large, 1890; Fink v. Schneider Granite Co., 187 Mo. 244; Ford v. Chicago Milk Shippers' Ass'n, 155 Ill. 166, 27 L. R. A. 298; Chicago W. & V. Coal Co. v. People, 214 Ill. 621, affirming 114 Ill. App. 75; People v. Sheldon, 139 Ill. 211, 23 L. R. A. 221; People v. Milk Exchange, 145 N. Y. 267, 27 L. R. A. 437; United States v. Jellico Mountain Coal & C. Co., 46 Fed. 432;

United States v. Coal Dealers' Ass'n of Cal., 85 Fed. 252; United States v. Chesapeake & Ohio C. Co., 105 Fed. 93; Northern Securities Co. v. United States, 193 U. S. 197. (3) The illegal purpose of the corporate organization to which plaintiff was a party is fatal to the cause of action. Morawetz on Corp., sec. 758; Metropolitan Lead & Zinc Min. Co. v. Webster, 193 Mo. 351; Williams v. Scullin, 59 Mo. App. 30; Irwin v. Williar, 110 U. S. 499; Gibbs v. Consolidated Gas Co., 130 U. S. 396.

VALLIANT, P. J.—Plaintiff, a judgment creditor of an Illinois corporation, sues defendant, a stockholder, to recover the amount of his judgment, $7,645.16, on the theory that defendant is liable because he has not paid for his stock. In the inception of the corporation the stock now owned by defendant was subscribed for by one Ruggles, who paid nothing for it, but who assigned it to defendant. Under the laws of Illinois not only the subscriber to the capital stock but the individual to whom it is assigned is liable to the corporation and to a creditor of the corporation for the unpaid face value of the stock.

The pleadings and evidence show as follows:

In 1894 certain persons engaged in the manufacture of spelter or interested in companies engaged in that business, among whom were the plaintiff and defendant, came together in St. Louis and discussed a method of obtaining a better price for their product than it was then bringing in the market. To accomplish this purpose they agreed to form a corporation under the laws of Illinois to combine in one organization the owners of the zinc furnaces in the States of Illinois, Kansas and Missouri, to which organization was to be given the market control of the products of all those furnaces; that is to say, all the concerns going into the scheme were to sell their product to the cor-

poration to be thus formed at a price regulated by a
scale agreed on, and the corporation was to have the
control of the product in the market, thereby avoiding
competition among themselves and controlling the mar-
ket for better prices, the profits derived from the better
prices to go back to the producers in the way of divi-
dends on their stock in the corporation to be formed.
The capital stock of the corporation was to be divided
and allotted to the constituent manufacturers in pro-
portion to the amount of their relative and respective
products.

The capital stock of the corporation was to be
$100,000, 1,000 shares, $100 each. The plaintiff agreed
to loan the corporation $100,000, without interest for
two years, in consideration of which he was to have
220 shares of stock, that is, the 220 shares of stock
were to compensate the plaintiff for the two years'
loan of his money. All the zinc producers in Illinois,
Missouri and Kansas went into this scheme, except two
in Illinois and one in Kansas. The agreement having
been made, the promoters deputized certain persons to
go across the river into Illinois to organize the corpora-
tion and they did so under the name of the Missouri
Metal Company. Among the subscriptions to the cap-
ital stock was one for 180 shares by George A. Ruggles,
who, the evidence shows, made the subscription with
the purpose of transferring the stock to the defendant
and did so; Ruggles paid nothing for it and received
nothing for it; nothing was ever paid for the stock
to the corporation unless the contract hereinafter men-
tioned is to be adjudged, as between the parties to
this suit, a payment.

The stock was allotted to the several persons and
companies entering into the scheme as above mentioned,
that is, 220 shares to the plaintiff for the use of his
$100,000 for two years, and the remaining 780 shares
to the manufacturers in the proportion of their rela-

tive and respective products, and it was so subscribed by them or by others for them and transferred to them. It seems, however, that, although all the stock was taken in this way, yet the certificates were not issued; they were signed, but all left in the stock certificate book, and so remained up to the date the corporation went out of business.

The corporation entered upon the business for which it was created, the constituent manufacturers turning over to it the products of their furnaces as agreed, but its operations did not meet the hopes of the promoters, and therefore after a few months of unsuccessful trial the stockholders resolved to sell the metal then on hand at the then prevailing market price, or lower if necessary, and wind up the business of the concern and quit, and this was done. All the stockholders voted in favor of that resolution except the defendant who opposed it. The plaintiff testified that in a little while thereafter the market took a turn for the better and if they had held on, as the defendant advised, the corporation would have proved a success. But howsoever that might have been, the corporation went out of business and ceased efforts, leaving its debt to the plaintiff or part of it at least unpaid. Plaintiff offered testimony tending to show that the other stockholders paid their proportion of the debt and that the amount left unpaid, which is the amount here sued for, is the proportion that would fall to defendant to pay if he is liable. The theory of the defendant is that as between the plaintiff and himself and all parties to the scheme the plaintiff paid for his stock by the loan of his money without interest to the company and the defendant paid for his stock by executing and delivering to the corporation his contract by which he gave the corporation the sole right to market the output of his zinc furnaces for the term of two years and each of the other manufacturers of zinc did the same.

The records of the corporation show that in the meeting organizing the corporation, at which the plaintiff was present and presided, this resolution was passed: "Resolved that on the payment by Alexander Euston to this company of the sum of $100,000, as a loan without interest for the term of two years, until January 1, 1896, the officers of the company are hereby authorized to issue a certificate for 220 shares of the capital stock of said company in lieu of interest on said loan to said Euston."

And in reference to each of the other stockholders was this resolution: "Resolved that on the signing and delivery of a certain contract by ———— to this company, dated January 27, 1894, by which the output of smelter of the ——— Zinc Company is made subject to the order of the Missouri Metal Company for two years, the officers of this company are hereby authorized to issue to ———— —— shares of the capital stock of said company."

It was under a resolution like that, with the name of the defendant inserted in the blank, that the 180 shares were ordered to be issued to defendant and under resolutions of like tenor and effect the shares of the other stockholders were authorized to be issued to them respectively.

On the books of the corporation, in the journal, the capital stock is charged to contract for $100,000, that is, the entries in the journal show that the capital stock was fully paid by the contracts of the several manufacturers of spelter. The plaintiff introduced in evidence certain statutes of Illinois showing that under the laws of that State both the subscriber for the stock and the assignee thereof were liable to the corporation and its creditors for the unpaid amount of its face value.

The defendant contended in the trial court and contends here that the plaintiff cannot recover for two

reasons, first, that the corporation was organized for the purpose of suppressing competition between the zinc manufacturers of Missouri, Illinois and Kansas, and to regulate and fix the price of that commodity contrary to the statute law of those States and of the United States, and, second, that, as between the plaintiff and defendant and the other parties in the scheme, the defendant's contract by which he agreed to give the corporation the control of the output of his manufactory for the term of two years was full payment for the stock.

The trial was by the court without a jury. The court at the request of the parties gave certain declarations of law in the nature of instructions, from which it appears that the court held the opinion that under the evidence the plaintiff was entitled to recover unless the court should find for the defendant under the following instruction or declaration given at the request of the defendant, to-wit:

"The court declares the law, that the party participating in the organization of a corporation and in the allotment of the capital stock thereof in consideration of contract obligations assumed by the parties to whom the same is allotted, cannot thereafter claim that such stock is in fact unpaid, but he is bound by the agreement to which he is a party, and has not the standing of a creditor who gives credit to the corporation on the faith of an actual payment in cash for the capital stock; if, therefore, it appears from the testimony that it was agreed between the plaintiff and the other parties, including defendant, who subscribed for the stock, or to whom the stock of the corporation was allotted, that the loan of capital by the plaintiff and the making of the several contracts by the other parties for the control of the product of their respective furnaces should be deemed a payment of the capital stock allotted, and that defendant duly executed his contract

as provided by said agreement, then the court declares that in that event plaintiff is bound by said agreement and the capital stock allotted to defendant was full paid as between him and the plaintiff and the other parties to said organization, and plaintiff therefore cannot recover in this action."

The finding and judgment were for the defendant and the plaintiff appealed.

I. The agreement and transactions out of which this controversy has arisen occurred in 1894. At that time under the statute law of this State it was declared that any person or corporation entering into an agreement or combination with another "to regulate or fix the price of any article of merchandise or commodity" should be "deemed and adjudged guilty of a conspiracy to defraud, and be subject to penalties as provided in this act." [Laws 1891, p. 186.] And in section 4 of that act it was declared that: "Any contract or agreement in violation of any provision of the preceding sections of this act shall be absolutely void."

The purpose for which this corporation was conceived and formed was the very purpose denounced in that act; the plaintiff's own testimony so shows. But it is said in the brief for plaintiff that that fact cannot avail the defendant here because this is an Illinois corporation, therefore not to be judged by a Missouri statute. In the brief for defendant reference is made to Illinois statutes which it is said are to the same effect as our own, but in behalf of plaintiff we are told that we cannot consider those Illinois statutes because they were not offered in evidence.

If the life of the Illinois corporation was herein assailed it would have to be adjudged by the Illinois law and that law would have to be pleaded and proven. [McPike v. McPike, 111 Mo. 216.] But no attack is made on the Illinois corporation; so far as the record

in this case shows that corporation was organized in strict conformity to the laws of that State and there is nothing on the face of the corporation record to show that it was organized for an unlawful purpose. The corporation is not the plaintiff in this suit and the defendant is not attacking the validity of its organization; this is a controversy between two individuals growing out of their relative and respective dealings with that corporation. The evidence shows that these gentlemen, who were all interested in the manufacture and sale of spelter and desiring for their own pecuniary profit to advance the market price of their product, came together in Missouri and entered into an agreement to put into the hands of one concern all the product of their furnaces for the term of two years to be by that concern sold and the profits divided among them in the proportion of their respective holdings. This agreement was made in Missouri and was to be, partly at least, that is, to the extent of the Missouri concerns involved, executed in this State; the corporation was but the agent or instrument to carry out the purpose of the agreement. Can we say that our statute which denounces a scheme of this kind can be evaded by the very simple method of employing a foreign corporation as the agent to carry it into effect? If so it would be better to repeal the statute because any statute that cannot be enforced, or that can be so easily evaded, breeds contempt of law and lawful authority.

The formation of an Illinois corporation to be the instrument of the parties to carry out their scheme no more made it an Illinois contract than if they had selected some individual citizen of Illinois for their agent.

The corporation in this instance was a mere tool, and the part that it took in the transactions out of which this suit has arisen was mere form; the real parties were those who entered into the combination.

to cease competition with each other and combine "to regulate or fix the price" of their products. We hold that the scheme out of which the plaintiff's claim arises was in violation of law and therefore cannot be enforced in a court of law.

II.   The second defense is that the defendant paid for his stock by the contract which he executed and delivered to the corporation, whereby he gave the corporation the control of his product for the term of two years, that is to say, as between this corporation and the plaintiff and this defendant the contract is to be adjudged as payment. That was the view taken by the trial court.

Whether the defendant would be liable to an outside creditor of the corporation or one who had dealt with it not knowing the terms on which the stock had been issued to the defendant is not a question in this case. The question here is whether the defendant is liable to this plaintiff who was a party to the original scheme to carry out which the corporation was formed, who was a promoter and organizer of the corporation.

The plaintiff as a witness testified that it was his understanding that the stockholders were to pay for their stock in money or money's worth, and that the contracts executed by them for the delivery of their product to the corporation to be pooled and sold had nothing to do with payment for the stock. The defendant testified that his understanding was that the contract was in payment of his stock.

The plaintiff offered evidence to show that the other stockholders had paid their share of the debt, the defendant alone refusing. The court rejected that evidence and we think properly so, because, whilst the interpretation that parties to a contract, vague or doubtful in its meaning, put on it while its performance is under way, is some evidence of its meaning, yet

when the business is all ended and settlements only remain to be made such interpretation then becomes a mere matter of opinion and is of little, if any, value. But in this case there was a very good reason why the other parties to this contract, or enterprise, might have felt in honor bound, if not in law, to pay the plaintiff their share of his loan to the corporation. They had agreed to go into it for two years and the plaintiff loaned his money to the concern for that period, but after they had tried it for a few months they became discouraged and resolved to dissolve the corporation and quit, and they did so. This defendant alone opposed the abandonment of the scheme, he insisted on going on but was voted down, he was not therefore under the same moral obligation to adjust the losses that his companions were.

This corporation was organized by the parties to the original pooling scheme, all the stock was to be owned by them and was owned by them. Whatever its nominal corporate powers may have been, whatever its public proclamation of purpose may have been, it was in fact organized for one purpose only, viz., to market the combined products of those zinc manufacturers. The stockholders were to be the customers of the corporation, its whole object was to handle their product; it was not contemplated that the corporation would have dealings with the public except to sell those products to whoever would buy. The corporation was, by the terms of the contracts with these manufacturers, to pay them for the zinc they produced a certain price calculated on the actual cost of production and a certain per cent added to make a level rate, and for funds to pay this price the plaintiff agreed to loan the concern $100,000, for two years. The assets with which the corporation was to go into business consisted of this two-year loan and these two-year obligations of the manufacturers; they were both valuable

assets, they constituted the corporation's whole stock in trade and the corporation paid for them. What did it pay? The records of the corporation show that for the use of the money for two years 220 shares of stock were to be issued to the plaintiff and in consideration of the contract of each of the manufacturers a certain number of shares of stock were to be issued to him, the number to be in proportion to the capacity of his zinc furnaces, the number so apportioned to the defendant was 180 shares. The language of the resolution under which the plaintiff obtained his stock and that under which the defendant obtained his, were of the same purport; in the one it said that for the use of the money without interest for two years the plaintiff was to have 220 shares, and in the other it said that for the right granted to the corporation by the contract to have the market control of his product for two years the defendant was to have 180 shares and a like resolution expressed the consideration paid by the corporation to each of the other manufacturers for the right to control the product of his furnaces. It was a sale by the manufacturer of a valuable privilege to the corporation for which the seller was paid in stock; if the stock he received was to be by him thereafter paid for in money then he received nothing for that which he sold. It cannot be said that he was to look for his pay for the privilege sold to prospective dividends on the stock, because if he was required to pay money for the stock the dividends, if any should come, would be the product of the money he so invested, and he would have received nothing for the privilege he sold to the corporation.

Not only do the records of the proceedings of the stockholders' meeting show that the stock was issued in payment for the privileges granted by the manufacturers, but the books of account kept by the corpora-

tion show that the stock was charged as paid in that way.

Whether the right to the market control of the output of defendant's zinc works for the period of two years was worth the price the corporation paid for it, that is, the stock at its face value, is not a question in this case, because we are here concerned only with the rights of those who were themselves parties to the contract and they cannot raise that question. The plaintiff not only knew the terms on which the stock was issued to the defendant and the other manufacturers, but he was himself the active officer of the corporation making the contracts; he was the president of the company and presided at the meeting when the contracts were made, that is, when the resolutions were adopted specifying the terms on which the stock was to be issued to himself, to the defendant and to the others.

A stranger dealing with a corporation has a right to presume that it has issued or agreed to issue its stock only for money or money's worth for its full face value, and if the corporation has issued its stock for less such stranger, becoming a *bona fide* creditor, failing to obtain satisfaction from the corporation, may have redress on the stockholders to the extent that the stock has not been paid for in full value. [Shickle v. Watts, 94 Mo. 410; Van Cleve v. Berkey, 143 Mo. 109; Berry v. Rood, 168 Mo. 316.] But this plaintiff is not in the attitude of a stranger or a creditor without notice, he was a party to the plan of the corporate organization by which it was agreed that the defendant should have this stock for the consideration of the privilege he sold to the corporation and therefore as to the plaintiff it must be adjudged that the defendant has paid for his stock.

The trial court had the correct view of the law of this case. The judgment is affirmed.

All concur.