### STANDARD OIL CO. (NEW JERSEY) et al. v. MARKHAM.

District Court, S. D. New York.

June 1, 1945.

On Petition for Reconsideration

June 6, 1945.

John W. Davis and Theodore S. Kenyon, both of New York City (Kenyon & Kenyon, of New York City, on the brief), for plaintiffs.

Philip W. Amram, Sp. Asst. to Atty. Gen. (Herbert Wechsler, Asst. Atty. Gen., and Harry Le Roy Jones, David R. Mason, and Roy C. Frank, Sp. Assts. to Atty. Gen., on the brief), for defendant.

WYZANSKI, District Judge.

This is an action under Sec. 9(a) of the Trading With the Enemy Act, 50 U.S.C.A. Appendix § 9(a). Standard Oil Company and three associated companies have brought this action to recover from the Alien Property Custodian thousands of United States patents and certain shares of stock in various corporations. Plaintiffs allege that they are the owners of these assets; that they acquired them, with a single exception, from I. G. Farbenindustrie by outright purchase; that the Custodian vested these assets in himself by two vesting orders; and that plaintiffs are entitled to have these assets returned.

One of several defenses asserted by the Custodian is that plaintiffs are not entitled to most of these assets because they were acquired by plaintiffs by agreements which violated the anti-trust laws of the United States. To raise this defense the Custodian has made allegations in paragraph V of his answer, has made an offer in evidence of a letter heretofore called Government Serial No. 149 written by Mr. Teagle to Mr. Riedeman, marked Exhibit D–62 for identification, and is prepared to make other offers of evidence. Plaintiffs have seasonably objected to the introduction of this evidence on the ground it is irrelevant.

This type of defense and offers of this type of evidence are novelties in proceedings under Sec. 9(a) of the Trading With the Enemy Act. So far as research of counsel and of the court can discover, it has not previously been decided whether when an American corporation seeks to recover from the Alien Property Custodian property of which it claims ownership the corporation should be denied relief on the ground that in acquiring or using that property it violated the anti-trust laws of the United States.

In considering the validity of this defense the first point is to observe the inevitable breadth of the Custodian's contention. If the Custodian is correct in his contention that relief should be denied where the claimed property was acquired in violation of the federal anti-trust laws, it would seem that relief should also be denied where the claimed property was acquired in violation of any other federal law, or any state law, or any foreign law. There is no hierarchy of laws in which the anti-trust laws are given peculiarly high rank. And the anti-trust laws, as the Supreme Court has recently recognized in Hartford-Empire Co. v. United States, 323 U.S. 386, 415, 65 S.Ct. 373, have no provision that patents used in violation of these laws shall be forfeited. Moreover, if the custodian is correct in his contention that relief should be denied where he is the person charged with a seizure unauthorized by law, it would seem that relief should also be denied where the person charged with the wrongful taking is a common thief,—at least if the suit where the issue arises is because of the nature of the property involved or because of the nature of the relief sought in an equity suit. The Custodian has no more statutory interest than any other person in the enforcement of the anti-trust laws.

Indeed if the Custodian's defense under the anti-trust laws were to prevail here, it is difficult to see why, aside from the restraints imposed by self-discipline and a consciousness of the risk of impeachment and removal, the Custodian would not be at liberty to sequester and keep all property in the United States acquired in violation of law, regardless of whether there had been the slightest connection between

the owner of the property and the enemy. This would mean that whenever property was acquired in violation of any law the offender ran the risk of the penalties prescribed by that law and also the risk of the unprescribed forfeiture of the property at the whim of an administrative official.

The unsoundness of the Custodian's defense under the anti-trust laws is revealed not alone by the breadth of its necessary implications, but by cases such as Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 549–551, 22 S.Ct. 431, 46 L.Ed. 679, and A. B. Small Co. v. Lamborn & Co., 267 U.S. 248, 253, 45 S.Ct. 300, 69 L. Ed. 597. These cases hold that where a person engaged in and acting pursuant to a conspiracy to violate the anti-trust laws makes a contract which is not inherently invalid he can enforce that contract against the other party. Similarly, where a person has acquired property by a contract in restraint of trade he can recover the property from a wrongful taker. California Cured Fruit Ass'n v. Stelling et al., 141 Cal. 713, 75 P. 320, 322. These authorities illustrate the rule, that a party to a previous illegal contract, agreement or combination with others, restraining competition in that business is not deprived of legal protection of his property in that business. American Law Institute, Restatement of Contracts Sec. 519; Williston, Contracts, Rev.Ed., Sec. 1661. Such a rule embodies the broad principle that while one who has acquired property in violation of law is subject to whatever personal penalties and infirmities of title that law provides, he is not an outlaw and his title to property is not subject to collateral attack. See, Bowmakers, Ld., v. Barnet Instruments, Ld. [1945] 1 K.B. 65, 71 (C.A.).

The case at bar is quite unlike Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, or Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486. Those cases hold that where two parties make a contract which is itself unlawful under the anti-trust laws a court will not enforce or grant a remedy upon that contract. In refusing to assist parties to consummate their unlawful bargains the court is obedient to the direct command of the law; it is not entering upon a collateral inquiry or attaching to prior unlawful conduct penalties unauthorized by statute. The distinction is too familiar to require elaboration. See A. B. Small Co. v. Lamborn & Co., supra; American Law Institute, Restatement of Contracts, Secs. 518, 519, 598, 607.

Although the Custodian places no reliance on Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363, perhaps a word should be said about its doctrine, particularly since it is in square conflict with the second illustration given for Sec. 519 of the Restatement of Contracts, cited two paragraphs above. As explained in Hartford-Empire Co. v. United States, 323 U.S. 386, 415, 416, 65 S.Ct. 373, the Morton Salt Co. case stands for the proposition that so long as a patent owner is using his patent in violation of the anti-trust laws he cannot restrain infringement of it by others. In the instant case plaintiffs, whatever may have been their past conduct, are not currently using the patents here involved in violation of the anti-trust laws. For some time the patents have been vested in the Custodian. Moreover, their use has been circumscribed for three years by the stringent terms of an outstanding decree of the United States District Court for the District of New Jersey. United States v. Standard Oil Co. Civil No. 2091 [1] Thus the doctrine of the Morton Salt Co. case which is limited to current violations of the anti-trust laws by the patentee does not apply. Furthermore it would be a bold interpretation which would carry the doctrine of that case beyond giving an infringer a defense against a patentee. It is hard to suppose that the Supreme Court meant to indicate that anyone may without accountability to a patentee take from him a patent he is using in violation of the anti-trust laws. See Hartford Empire Company v. United States, supra.

In summary, I conclude that it is not open to the Alien Property Custodian to defend his seizure of the patents and shares of stock involved in this case on the ground that plaintiffs have acquired them by violating the anti-trust laws. To allow such a defense would permit a collateral attack contrary to accepted principles of contract and property law, would add to the anti-trust laws a sanction not authorized by Congress, and would establish a precedent whereby any person, whether or not a public officer, could retain with impunity property which he had unlawfully seized from an owner who had happened

---

[1] No opinion for publication.

to acquire the property in violation of some national or local law.

Objection sustained.

### Petition for Reconsideration

The Custodian suggests that my memorandum of June 1, 1945, does not squarely meet all his contentions as to the admissibility of evidence tending to show that the plaintiffs have violated the anti-trust laws.

The Custodian asks me to assume that on the basis of the testimony I shall eventually find that on the dates the Custodian vested in himself the patents, corporate shares and other assets here involved, (1) that legal title to some of those assets was in plaintiffs; (2) that, however, the principal beneficial ownership to such assets was in I. G. Farbenindustrie, and (3) that plaintiffs' rights were merely to share in the managing or licensing of those assets and to share in the income, or royalties from them. If I should make these findings the Custodian says that I might normally enter a decree establishing licensing and royalty rights in the plaintiffs. But the Custodian urges that I ought not to enter such a decree because the plaintiffs' rights are, in his view and in his terminology, "future executory contractual interests" springing out of agreements which were in violation of the anti-trust laws. Were my decree to establish such rights, the Custodian says that this Court would be enforcing an agreement in violation of law and this Court would be lending its aid to a restraint of trade.

There are at least two answers to the Custodian's contention.

First, even in the situation assumed by the Custodian, unlike the situation Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, this Court would not be enforcing the unexecuted part of an unlawful bargain at the suit of one party against the other party. This Court would be merely declaring that there existed a certain status between two parties in property seized by an outsider. It is to be remembered that even on the Custodian's assumptions, this suit could not be converted into a proceeding sounding in contract to recover considerations which I. G. Farbenindustrie had agreed to transfer to plaintiffs in the future. This suit is primarily a proceeding by plaintiffs to recover assets which they claim I. G. Farbenindustrie had already transferred to plaintiffs in the past, and is perhaps alternatively a proceeding to have a declaration of the status of plaintiffs' property rights in assets formerly owed by I. G. Farbenindustrie and now owned by the Custodian. When a question of the status of property rights is at issue an inquiry as to whether the status was acquired in violation of a statute is irrelevant and collateral unless the statute otherwise provides. The reasons are given in my memorandum of June 1, 1945 and are supported by Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 592–595, 41 S.Ct. 209, 65 L.Ed. 425; California Cured Fruit Ass'n v. Stelling, 141 Cal. 713, 75 P. 320, 322; Bowmakers, Ld. v. Barnet Instruments, Ld. [1945] 1 K.B. 65, 71 (C.A.); Am.L.Inst., Restatement of Contracts, § 519.

Second, there is no risk in the present case that any decree by this Court establishing rights in the plaintiffs in the assets here involved would aid in the current carrying out of an unlawful plan. The plaintiffs are already operating under the decree of the United States District Court for New Jersey. They may use their rights in these patents, corporate shares and other assets only as that decree provides. No one suggests that that decree is an inadequate protection against future use of these assets in violation of the anti-trust laws. There is no merit in the Custodian's reply that the basic agreements were illegal ab initio and therefore the rights existing thereunder cannot be exercised. To refuse to recognize these rights when there is now no prospect of their future use in violation of law would be a confiscation of these rights on account of past misconduct and would also involve the imposition of a sanction not authorized by the anti-trust laws or by usual principles of equitable relief.

Independently of his other contention, the Custodian has also advanced the suggestion that if I. G. Farbenindustrie made transfers of titles or interests to plaintiffs these transfers were in violation of the anti-trust laws and therefore the transferor, I. G. Farbenindustrie, and its successor, the Custodian, have a right of rescission. This suggestion is in conflict with Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 592–595, 41 S.Ct. 209, 65 L.Ed. 425. There it was held that the shareholders of the Alice Gold & Silver Company which was charged with having made a sale of property to the Anaconda Copper Mining Company in pursuit of a

purpose of both companies to violate the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, could not have that sale set aside. As Mr. Justice Clarke said at page 593 of 254 U.S., at page 210 of 41 S.Ct., 65 L.Ed. 425, "It is now the settled law that the remedies provided by the Anti-Trust Act of 1890 * * * for enforcing the rights created by it are exclusive, and therefore, looking only to that act, a suit, such as we have here, would not now be entertained." The reasoning of the Court makes it plain that there is no right of rescission by a seller, or one in his shoes, against a purchaser who in purchasing violated the anti-trust laws, regardless of whether the seller was also violating those laws.

My ruling of June 1, 1945, sustaining plaintiffs' objection, stands.