**Mabel K. CARTER, Trustee, Plaintiff,**

v.

**TWENTIETH CENTURY–FOX FILM CORPORATION et al., Defendants.**

**No. 7940.**

United States District Court, W. D. Missouri, W. D.

Jan. 19, 1955.

William G. Boatright, Kansas City, Mo., Boyd Ewing, Nevada, Mo., Nick C. Spanos, Beverly Hills, Cal., for plaintiff.

Spencer, Fane, Britt & Browne, Kansas City, Mo., for Twentieth Century-Fox Film Corp.

Sebree, Shook, Hardy & Ottman, Kansas City, Mo., for Warner Bros. and Columbia Pictures.

Watson, Ess, Marshall & Enggas, Kansas City, Mo., for remaining defendants.

RIDGE, District Judge.

Action for treble damages under Section 4 of the Clayton Act, 15 U.S.C.A. § 15. The present matter concerns a motion for summary judgment filed by the defendant Twentieth Century-Fox Film Corporation, one of the several named defendants, grounded on a general release allegedly executed in its favor by the plaintiff in the year 1942. Neither party raises any substantial question with reference to the facts necessary to the consideration of the motion. The following may be found in the factual descriptions of either party.

The cause of action here asserted arises from the plaintiff's operation and ownership in 1940 and 1941 of two moving picture exhibition houses, the Liberty and Sedalia Theatres, in the City of Sedalia, Missouri. These two theatres were purchased by plaintiff's husband and one Charles Sears in 1926. In that year they leased the same at a rental of $1,833.33 per month to certain individuals for operation as motion picture theatres. Shortly thereafter, the individual lessees assigned their leases to the defendant Fox Ozark Theatres Corporation, a wholly-owned subsidiary of the defendant Fox Midwest Theatres, Inc. Mabel K. Carter, upon the death of her husband, succeeded to his one-half interest in the above theatres in 1935. In 1936, Mrs. Carter and Sears granted Fox Ozark a new lease for a term ending on August 31, 1940, at a rental of $1,550 per month. In February, 1939, the parties began negotiating for a renewal lease. Because of Fox Ozark's insistence that the rental be further reduced, and the owners not agreeing, the lease was allowed to expire.

Beginning in September, 1940, the owners attempted to operate the theatres themselves but without success. In November, 1940, Sears withdrew from such enterprise. The circumstances regarding his withdrawal are not presently clear. Plaintiff alleges that at that time she acquired the Sears interest and became the sole owner of the theatres. Plaintiff continued operation of the theatres until April 29, 1941. She charges that since none of the defendant exhibitors would furnish her, as they had Fox Ozark, with films for first-run exhibition in either of the above theatres she was required to discontinue operations, because of operating losses incurred.

Meanwhile, Fox Ozark obtained a lease on another building in Sedalia and converted it into a movie theatre which that Company operated on a first-run basis in competition with the Liberty and Sedalia. The Sedalia and Liberty were operated as second-run houses by the plaintiff. April 29, 1941, plaintiff gave Fox Ozark an option to lease the above theatres at a substantially reduced rental. The terms of said option, in some degree, indicate the relative bargaining power of the parties. Plaintiff therein agreed to lease her theatres to Fox Ozark for a 10-year term at a rental of $350 a month for the first two years, and $400 a month for the remainder. Fox Ozark was given an option to buy the theatres at any time within the first two years for $40,000. If the option was not exercised, plaintiff could sell the Sedalia Theatre to some third party, but not without a restrictive covenant to the effect that the property would not be used for any "motion picture, theatre, or amusement purpose" during the term of the lease. The option also contained a provision for a general release whereby Mrs. Carter agreed to release Fox Ozark and all its affiliates from "any and all claims, demands, or charges" which Mrs. Carter then claimed to have up to the date of the agreement.

Thereafter, the attorney for Fox Ozark drew up a formal lease containing all of the above provisions and a general release reading as follows:

"In consideration of the execution of this lease and the covenants and agreements to be performed hereunder by Lessee, Lessor does hereby remise, release and forever discharge the Lessee, and all corporations affiliated with it by stock ownership, either directly or through an intervening corporation, or corpora-

tions, or otherwise, its, and their, officers, agents and employees, of and from all causes of action, debts, sums of money, contracts, controversies, promises, trespasses, damages, claims and demands whatsoever, in law or in equity, that against said parties, or any of them, the said Lessor ever had, now has or claims to have, by reason of any thing, matter or cause whatsoever up to the date of the execution of this lease."

An extension of the above lease was executed in June, 1946, by Gilbert Carter and Betty Carter Trowbridge, who then held title to said property in trust for Mabel K. Carter, continuing all the provisions of the above lease in full force and effect to May 14, 1961, and agreeing that all covenants thereof had then been performed.

Plaintiff alleges in her complaint that as a result of the conspiracy and monopoly complained of, and "against her will, wishes and desires," she was compelled to execute the option and lease agreements containing the foregoing provisions, as a result of "economic coercion, duress and business compulsion" exerted upon her by the defendant "Fox". The matters alleged in the complaint appear to be adequate to present such an issue to the trier of the facts in this case. It is therein charged, tersely stated, that at the time plaintiff undertook to operate said theatres defendants were engaged in a national conspiracy and monopoly to unreasonably restrain interstate trade and commerce; that such national conspiracy had an impact on her operations because by one aspect thereof Fox was allocated the territory including Sedalia, Missouri, for first-run exhibition of motion pictures, and as a consequence the defendants, and each of them, refused to permit her to negotiate for, or obtain, first-run pictures for showing in her theatre, and imposed other restrictions on her operation, which were not imposed on Fox, and that as a direct result of such matters she operated her theatre at a loss and was finally compelled to cease doing business. The complaint does not in specific terms allege that it was an object of the conspiracy and monopoly charged to compel plaintiff to lease her theatres to Fox Ozark, but an inference can be drawn from what is alleged that such a result was an object of the conspiracy and monopoly. She says that she finally "capitulated" to the demands made of her by Fox Midwest and Fox Ozark.

It is the position of the defendant that under the above facts and release clauses it is entitled to a judgment of dismissal herein as a matter of law. We cannot agree.

■■■ Releases are, of course, nothing more than contracts; and, as such, they are subject to the same general principles of law. Contracts may be distinguished in three types; those that are binding upon the parties under all circumstances; those which may, under certain circumstances recognized by law, be avoided by one or the other of the parties; and those that are absolutely void under all circumstances. We conclude, accepting as we must the facts well pleaded in the complaint to be true, that the option and lease agreements containing the release with which we are here concerned is of the last type. If we are correct in so concluding, and that appears to be plaintiff's theory of action, then the release here pleaded in defense can have no effect on plaintiff's claim, which we can now determine by way of summary judgment.

As above noted, the release was integrated into the lease contract, the end result of which, if plaintiff's theory of action is sustained, can only be said to have been the culmination of the conspiracy to effectively remove plaintiff from competition in the business of exhibiting motion pictures in the Sedalia, Missouri, area. As such, said lease contract is just one of the many acts charged in the complaint by which defendants are alleged to have been able to establish the impact of the conspiracy and that caused the unreasonable restraint of interstate trade on which this

action is based. We believe that from the evidence now before us an issue of fact is raised as to the validity of such lease agreement. If such issue is sustained by adequate proof it would be sufficient to support a finding that this contract was one "in restraint of trade or commerce among the several States" expressly declared to be illegal under Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2.

 There is a serious question as to the validity of the instant contract. Even under the common law contracts importing restrictive covenants such as this one contains were void, at first in all instances, though later some were upheld if the restraint was only partial and purely ancillary to some other valid transaction. See Williston on Contracts, Rev.Ed., Sec. 1634, and the excellent discussion by Taft in United States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, 46 L.R.A. 122, affirmed 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136. Even so, the rule has been modified by the Federal Courts, possessed, as they are, of a statute expressly declaring such contracts illegal. Under the Sherman Act the courts, in enforcing such contracts, must deal with the concept of "reasonableness" imposed by Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, and if they are found "unreasonable" they cannot be given any legal effect. The "unreasonableness" thereof is at most a mixed question of law and fact for determination by a jury under proper instructions. Raytheon Mfg. Co. v. Radio Corp. of America, 1 Cir., 76 F.2d 943, 950, affirmed 296 U.S. 459, 56 S.Ct. 297, 80 L.Ed. 327.

 We are here dealing with a claim of conspiracy and monopoly that has been expressly found to exist and held to be an unreasonable restraint of interstate trade and commerce at the very period of time plaintiff claims she was put out of business by the impact thereof. United States v. Par-

amount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. Even in the absence of proof of such a finding and impact, the circumstances under which this contract is alleged to have been executed might justify a finding that the restraint therein imposed would be likewise unreasonable. The contract expressly precluded plaintiff from selling the Sedalia Theatre to another for any use that could possibly be competitive with defendants' alleged monopoly. Such a restriction, entirely disassociated and in nowise ancillary to any lawful purpose, can be held to be unreasonable under the tests that must be applied. See Restat. of Contracts, Sec. 515. The consideration for that provision in the lease, as well as that given for the release clause, are so connected with the whole consideration, and other provisions of the agreement, as to make the same inseparable.

 If the resultant restraint of a contract, obtained as the consequence of a conspiracy, be so unreasonable as to be illegal, all the means which were used to obtain such a result are also unlawful. As said in American Tobacco Co. v. United States, 328 U.S. 781, 809, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575:

> "It is not of importance whether the means used to accomplish the unlawful objective are in themselves lawful or unlawful. Acts done to give effect to the conspiracy may be in themselves wholly innocent acts. Yet, if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition."

 Stated another way, if the object of a conspiracy or monopolistic scheme is illegal, each part thereof is equally illegal. Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518; Aikens v. Wisconsin, 195 U.S. 194, 25 S.Ct. 3, 49 L.Ed. 154. If such an illegal end is accomplished by use of restrictive contracts, such contracts cannot be given any legal effect.

Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47; International Business Machines Corp. v. United States, 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085.

■■■ That the particular contractual provision with which we are here concerned is a release does not thereby render it valid. Whether the release portion can be separated out from the other provisions of the contract or not, the contract is invalid in all its parts if it is found that it formed part of the plan used to obtain a monopoly; the whole contract, including any otherwise reasonable provisions therein, is unenforceable. Rest. of Contracts, Sec. 518; Williston op. cit., 1659, citing Standard Oil, New Jersey v. Markham, D.C., 61 F.Supp. 813, certiorari denied 333 U.S. 873, 68 S.Ct. 901, 92 L.Ed. 1149.

We do not believe that any of the cases cited by defendant, Lawlor v. National Screen Service, 3 Cir., 211 F.2d 934, certiorari granted 348 U.S. 810, 75 S.Ct. 42; Duffy Theatres Inc. v. Griffith Consol. Theatres, Inc., 10 Cir., 208 F.2d 316; Suckow Borax Mines Consol. v. Borax Consol., Ltd., 9 Cir., 185 F.2d 196; Eagle Lion Classics v. Loew's Inc., D.C., 121 F.Supp. 128, are in any way contra. The releases sustained in these cases were not attacked as being an instrument used to further the illegal conspiracy or monopoly charged, but as being obtained through independent means of duress. We agree with the holding in these cases that claims under the anti-trust law may be validly compromised under proper circumstances; however, this does not mean that a release obtained, if but another of the means used by the conspirator to accomplish the monopolistic result, is necessarily valid; for as said in Raytheon Mfg. Co. v. Radio Corp. of America, 1 Cir., 76 F.2d 943, 949:

"In the case before us the release alleged to have been signed under duress enters into and forms an integral part of an agreement alleged to be illegal because establishing a monopoly in restraint of interstate trade. If the agreement is void the release is void, and requires no court of equity to so declare it."

In the decision of the Supreme Court affirming the Circuit Court's holding in that case it was held that the release need not be rescinded in equity but would be void at law, Justice Cardozo, speaking for the Court, said, 296 U.S. 459, 462, 56 S.Ct. 297, 299, 80 L.Ed. 327:

"A release under seal is a good defense at law, unless its effect is overcome by new matter in avoidance. This will happen, for illustration, when it is so much a part of an illegal transaction as to be void in its inception * * * whether the release will collapse upon the showing of an illegal combination or will retain an independent life. That is matter for the trial at law, where the bond between monopoly and surrender can be shown with certainty and fulness."

We believe that plaintiff here should be allowed to prove, if she can, the "certainty and fulness", if any, of the bond by which defendant Fox says she is bound by this release. See also Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C.S.D.N.Y., 39 F.Supp. 117, where a motion for summary judgment in circumstances similar to those here presented was denied on the authority of the Raytheon case.

In the case at bar the complaint alleges that the release was executed at, or about, the same time plaintiff says her business was destroyed by a conspiracy and monopoly created by defendants. Thus assuming, we need not consider the various other points raised by defendant in support of its motion. The present case, as we have viewed it, is not one in which the plaintiff is seeking to avoid a release solely by a plea of duress, as defendant assumes, but one where she maintains that the release was void in its *pactum*. Wheth-

er releases obtained by duress be void or voidable under the law of Missouri does not now concern us (although contracts such as the present one seems to be void under that law of that state; Cf. Renwood Food Products v. Schaefer, 240 Mo.App. 939, 223 S.W.2d 144; Euston v. Edgar, 207 Mo. 287, 105 S.W. 773, for we believe this contract is made void, if it is void, by express provision of federal law concerning which state decisions are in no way binding on us. Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165.

Nor need we consider whether the present anti-trust claim was within the intent of the parties when they executed this release, for if the instrument they executed, whatever its purview, is the result of a conspiracy in unreasonable restraint of trade, or resulted in a monopoly, it is and was of no legal effect.

Accordingly, defendant's motion must be, and hereby is, overruled. It is so ordered.

It is further ordered by the Court that pre-trial conference be held herein on Monday, January 24, 1955, at 10:00 o'clock, A.M.