46 F.Supp.2d 1058 (1997)
ST. LOUIS CONVENTION AND VISITORS COMMISSION, Plaintiff,
v.
NATIONAL FOOTBALL LEAGUE, et al., Defendants.
No. 4:95CV2443 JCH.
United States District Court, E.D. Missouri, Eastern Division.
August 4, 1997.
Alan E. Popkin, Partner, Arthur L. Smith, Omri E. Praiss, Richard Franklin Cauley, Husch and Eppenberger, St. Louis, MO, Robert D. Blitz, Charles S. Kramer, Riezman & Blitz, P.C., Clayton, MO, for plaintiff.
John A. Klobasa, Partner, Alan C. Kohn, Partner, Kohn and Shands, St. Louis, MO, Shepard Goldfein, Julie L. Spar, James A. Keyte, Skadden and Arps, New York City, Sonya D. Winner, Gregg H. Levy, Noah J. Silverman, Eric C. Bosset, Stacey L. Dogan, David B. Deitch, Covington and Burling, Washington, DC, Frank Rothman, Douglas B. Adler, Skadden and Arps, Los Angeles, CA, Becky L. Huinker, St. Louis, MO, for defendants.
Shepard Goldfein, Julie L. Spar, James A. Keyte, Skadden and Arps, New York, NY, Becky L. Huinker, St. Louis, MO, for San Francisco Forty-Niners, Limited, defendant.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court on Defendants' Motion for Summary Judgment (Settlement), filed May 16, 1997. Plaintiff filed its Memorandum in Opposition to such Motion on June 23, 1997, and Defendants filed a Reply Memorandum on July 8, 1997.

BACKGROUND
As explained more fully in this Court's Order granting Defendants' Motion to Compel the Production of Documents by Plaintiff (dated June 26, 1997), this suit involves the relocation of the Los Angeles Rams (the "Rams"), a member club in the National Football League (hereinafter "NFL" or "the League"), to St. Louis. In January 1995, the Rams and Plaintiff entered into a "Relocation Agreement" under which they agreed that the Rams would seek NFL approval of the club's relocation to St. Louis. (Memorandum of Law in *1059 Support of Defendants' Motion for Summary Judgment (Settlement) (hereinafter "Memo in Support"), P. 1). Plaintiff and the Rams further entered into a "Mutual Litigation Management and Joint Defense Agreement," which recognized that the signatories might have occasion to sue the NFL if the League declined to permit the move by March 31, 1995. (Id., P. 4). In mid-March 1995, after the NFL disapproved the relocation, Plaintiff and the Rams amended the Relocation Agreement to extend the litigation trigger date until April 17, 1995. (Id.).
On April 12, 1995, the NFL approved the Rams' proposed relocation, subject to certain conditions. Plaintiff and the Rams then amended their Relocation Agreement on April 14, 1995, as follows:
WHEREAS, the RAMS and the [Plaintiff] believe that it is in their respective best interests to avoid protracted and costly litigation with the NFL and to accept the conditions to approval of the Application imposed by the NFL in order to provide for the immediate relocation of the NFL franchise to St. Louis, Missouri ...
[Neither] the Rams [nor] the CVC ... shall file or pursue the Action against the NFL and its constituent members pursuant to that certain Mutual Litigation Management and Joint Defense Agreement or otherwise ...
(Amendment No. 6 to the NFL Franchise Relocation Agreement, Def.Ex. 1). That same Amendment recited Plaintiff's agreement to pay to the NFL $20 million of the Rams' $29 million relocation fee. (Id.).
On June 23, 1995, the NFL and the Rams executed a letter agreement confirming and implementing the agreement reached by the parties, as follows:[1]
This letter confirms, interprets, and implements the terms of 1995 NFL Resolution G-4 (the "Resolution"), which conditionally authorized the relocation of the Rams' home territory to St. Louis, Missouri. The Rams and the Regional Convention and Visitors Commission (the "CVC") (Plaintiff) did not concur with many of the positions taken by the League with respect to the club's proposed relocation, but we agreed when the Resolution was adopted that our mutual interests would be served by the avoidance of further disputes (including the avoidance of possible litigation) and the prompt relocation of the Rams' home territory. The Resolution embodies the general terms of our settlement with respect to such relocation, and this letter elaborates upon and clarifies certain aspects of that settlement, ...
(June 23, 1995 letter, Def.Ex. 2). That same day, in compliance with the "Escrow Agreement (NFL Settlement Funds)" to which Plaintiff was a party, Plaintiff transferred to an escrow agent the $20 million that it had agreed to pay to the NFL. (Memo in Support, P. 3).
Plaintiff filed the instant Complaint on December 18, 1995 alleging, among other things, violations of the Sherman Act and the Missouri Antitrust Law.[2] In their Motion for Summary Judgment (Settlement), Defendants allege that the present action *1060 is barred, as Plaintiff effectively released its relocation-related claims in the above described documents.[3] (Memo in Support, PP. 12-16). Plaintiff counters that the existence of the alleged release presents a factual issue, not appropriate for determination on summary judgment. (Memo in Opposition, PP. 6-16). Further, Plaintiff asserts that should the Court hold that a release was executed, such release is nevertheless unenforceable under the Sherman Act, as it was part and parcel of the NFL's violation of the antitrust laws. (Id., PP. 20-22). Because the Court finds this latter issue to be dispositive of the entire Motion for Summary Judgment, it will address such issue first.

SUMMARY JUDGMENT STANDARD
The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. 2505. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 256, 106 S.Ct. 2505.
In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255, 106 S.Ct. 2505. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249, 106 S.Ct. 2505.

ANALYSIS
In its Memo in Opposition, Plaintiff alleges that if the NFL had in fact obtained a release from Plaintiff, the release would be void as a violation of the Sherman Act:
The $20 million relocation fee which CVC (Plaintiff) paid to the NFL is a product of the NFL's illegal restraints on team relocations and its monopoly power over professional football. Any release obtained in connection with the Rams' relocation would be part and parcel of the same violation. As a result, the release would be unenforceable.
(Memo in Opposition, P. 20). Defendants conversely contend that the above-cited documents together constitute a valid contract, in which Plaintiff agreed to forego all relocation-related litigation against Defendants in an effort to facilitate the move.
"Normally there is a presumption in favor of the validity of releases, and courts may give them effect by means of summary judgment, even in antitrust cases." Dobbins v. Kawasaki Motors Corp., 362 F.Supp. 54, 56-57 (D.Or.1973). However, several courts have held that a plaintiff may use a "part and parcel" argument to avoid a release in an antitrust action "where it is shown that the release *1061 was an object of the combination or conspiracy or where it was an integral part of the scheme in restraint of trade." Dobbins v. Kawasaki Motors Corp., 362 F.Supp. at 58. See also, Ingram Corp. v. J. Ray McDermott & Co., Inc., 698 F.2d 1295, 1315 (5th Cir.1983) ("Under Redel's we intimated that another case may someday arise where `the release itself was an integral part of a scheme to violate antitrust laws' and therefore will not be construed to extinguish antitrust claims"); Carter v. Twentieth Century-Fox Film Corp., 127 F.Supp. 675, 680 (W.D.Mo. 1955).
In the instant case Defendant alleges that, like the plaintiff in Ingram, Plaintiff here has failed to produce any evidence that the release was "part and parcel" of the alleged antitrust violation. Rather, Defendant alleges that because the release here was "`merely an outgrowth, rather than a cause, of the violation, it cannot be part of any ... scheme' that would bar its enforcement." (Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment (Settlement), P. 13, citing Northern Oil Co. v. Standard Oil Co., 761 F.2d 699, 706 (Temp.Emer.Ct.App.) (Metzner, J.), cert. denied, 474 U.S. 821, 106 S.Ct. 73, 88 L.Ed.2d 59 (1985)).
Upon careful review of the record, the Court finds Defendants' attempted analogy to the Ingram case to be flawed. In Ingram, the court upheld a release because it was executed almost two years after the alleged antitrust violations and the sale of plaintiff's business to defendant. As a result of the extended time lapse between the events, the release was held to be an outgrowth of the antitrust violation, rather than "part and parcel" of the scheme to violate the antitrust laws. Traffic Scan Network, Inc. v. Winston, Civ.A. No. 92-2243, 1993 WL 390144 at *2 (E.D.La. Sept. 24, 1993), citing Ingram, 698 F.2d at 1315.
Viewing the facts in the light most favorable to Plaintiff, however, as it must for purposes of this motion, the Court finds that Plaintiff here has presented evidence sufficient to demonstrate a part and parcel defense to the alleged release. Plaintiff asserts that Defendants conspired to force Plaintiff to adhere to their illegal restraints on team relocations. Should Plaintiff effectively prove such allegations, then the alleged release, executed simultaneously with the relocation agreements, would be considered an integral part of the scheme to violate the antitrust laws. Accordingly, because the release may be invalid as a cause of the violation, it does not bar Plaintiff's claims, and Defendants' Motion for Summary Judgment must be denied.

CONCLUSION
Accordingly,
IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Settlement) (Doc. No. 97) is DENIED.
NOTES
[1] Defendant maintains that Plaintiff was a party to this agreement as well. Plaintiff, however, alleges that rather than endorsing the entire June 23, 1995 Letter Agreement, thereby "implement[ing] the settlement that had been reached by all parties," it specifically acknowledged only its obligation to pay the NFL $20 million. "CVC (Plaintiff) did not acknowledge any obligation under any other part of the June 23 Letter Agreement, including the cryptic reference to `our settlement.'" (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Settlement) (hereinafter "Memo in Opposition"), P. 6).
[2] Specifically, Plaintiff seeks, "... compensation for the damages which they have incurred as a result of the long-standing conspiracy and anticompetitive conduct by the NFL and its member teams to restrict and impede the development of full, fair and free market for stadiums offering their facilities to major league professional football teams within the United States." (Plaintiff's Complaint, ¶ 1).
[3] Alternatively, Defendants assert that as a third party beneficiary, the NFL is entitled to enforce the agreement between the Rams and Plaintiff not to sue the NFL. (Memo in Support, PP. 16-18).