INTERNATIONAL BUSINESS MACHINES CORP.
*v.* UNITED STATES.

No. 758. Argued April 8, 1936.—Decided April 27, 1936.

*Messrs. Martin A. Schenck* and *Drury W. Cooper,* with whom *Mr. Edward Cornell* was on the brief, for appellant.

*Assistant Attorney General Dickinson,* with whom *Solicitor General Reed* and *Messrs. Charles H. Weston* and *George P. Alt* were on the brief, for the United States.

MR. JUSTICE STONE delivered the opinion of the Court.

This is an appeal, § 238 of the Judicial Code, from so much of a decree of a District Court for Southern New York as enjoins the appellant from leasing its tabulating and other machines upon the condition that the lessees shall use with such machines only tabulating cards manufactured by appellant, as a violation of § 3 of the Clayton Act, 38 Stat. 731, 15 U. S. C. § 14.

The Government brought the suit against appellant and three other corporations, all manufacturers of machines performing substantially the same functions as appellant's, to restrain the use by each of the defendants of a specified type of lease of their machines as a violation of the Clayton Act, and to declare void under the Sherman Act a contract into which they had entered, by which each agreed to use that type of lease, and not to solicit the lessees of machines of the others to purchase tabulating cards which it manufactures. The case was tried upon the pleadings and a stipulation of facts, in which the defendants consented to a decree cancelling

their agreement with each other. Two of the defendants have been eliminated from the suit, one by dissolution and the other by merger with appellant. A third defendant, Remington Rand, Inc., has stipulated that the decree to be entered against it shall conform to that entered against appellant upon this appeal.

Appellant's machines and those of Remington Rand, Inc., are now the only ones on the market which perform certain mechanical tabulations and computations, without any intervening manual operation, by the use in them of cards upon which are recorded data which are the subject of tabulation or computation. Appellant manufactures three types of machines, known as punching machines, sorters and tabulators. The punching machines are used to perforate cards, called tabulating cards, in such manner that the positions of the perforations indicate numerical or other data. When the cards are passed through the sorter or tabulator, control of its mechanism is effected by electrical circuits established by contacts through the perforations. The cards are thus made permanent records of information, and by the perforations are given such form that they may be used, as often as required, to control the function of the machines through which they are passed. The sorting machines are used to sort the perforated cards so as to classify them by the selection and segregation, in the desired manner, of those signifying any particular type of information. The tabulating machines are used to record the information denoted by the perforated cards or to make computations based upon it. In the Remington Rand machines the control is not electrical, but is accomplished by the use of cards which admit of the movement, into the perforations, of small pins which, by linkage, guide the mechanical operation of the machine so as to effect the desired result.

To insure satisfactory performance by appellant's machines it is necessary that the cards used in them conform to precise specifications as to size and thickness, and that they be free from defects due to slime or carbon spots, which cause unintended electrical contacts and consequent inaccurate results. The cards manufactured by appellant are electrically tested for such defects.

Appellant, leases its machines for a specified rental and period, upon condition that the lease shall terminate in case any cards not manufactured by the lessor are used in the leased machine. A special form of lease has been granted to the Government by which it is permitted to use cards of its own manufacture upon paying a 15% increase in the rental of the leased machines, but upon condition that the lease shall be terminable if the Government uses such cards without payment of the additional rental.

Appellant insists that the condition of its leases is not within the prohibition of the Clayton Act, and it has assigned as error the conclusion of the district court that the condition tends to create monopoly. But its principal contentions are that its leases are lawful because the protection secured by the condition does not extend beyond the monopoly which it has acquired by patents on the cards and on the machines in which they are used, and that in any case the condition is permissible under § 3 of the Clayton Act because its purpose and effect are only to preserve to appellant the good will of its patrons by preventing the use of unsuitable cards which would interfere with the successful performance of its machines.

1. Section 3 of the Clayton Act, so far as it is applicable to the present case, provides that "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease . . . machinery . . . whether patented or unpatented, for use . . . within the United States . . . on the condition . . . that the lessee . . .

shall not use . . . supplies or other commodities of a competitor . . . , where the effect of such lease . . . or such condition . . . may be to substantially lessen competition or tend to create a monopoly in any line of commerce." The statute thus in precise terms makes unlawful a condition that the lessee shall not use the supplies or commodities of a competitor of the lessor if the effect of the condition "may be" to lessen competition substantially, or if it tends to create a monopoly.

Little need be said of the contention that the condition of appellant's leases does not infringe these prohibitions. It is true that the condition is not in so many words against the use of the cards of a competitor, but is affirmative in form, that the lessee shall use only appellant's cards in the leased machines. But as the lessee can make no use of the cards except with the leased machines, and the specified use of appellant's cards precludes the use of the cards of any competitor, the condition operates in the manner forbidden by the statute. See *United Shoe Machinery Co.* v. *United States,* 258 U. S. 451, 457, 458; compare *Federal Trade Comm'n* v. *Sinclair Refining Co.,* 261 U. S. 463, 474. A different question is presented from that in the *Sinclair* case, where a wholesale distributor of gasoline leased gasoline pumps to retail dealers with the stipulation that they should not be used for the pumping of gasoline of the lessor's competitors. As the only use made of the gasoline was to sell it, and as there was no restraint upon the purchase and sale of competing gasoline, there was no violation of the Clayton Act.

The conclusion of the trial court that appellant's leases infringe the monopoly provisions of the section does not want for support in the record. The agreed use of the "tying clause" by appellant and its only competitors, and the agreement by each of them to restrict its competition in the sale of cards to the lessees of the others, have oper-

ated to prevent competition and to create a monopoly in the production and sale of tabulating cards suitable for appellant's machines, as the district court found. The commerce in tabulating cards is substantial. Appellant makes and sells 3,000,000,000 cards annually, 81% of the total, indicating that the sales by the Remington Rand company, its only competitor, representing the remaining 19%, are approximately 600,000,000. It is stipulated that appellant derives a "substantial" profit from its card sales. The gross receipts from its machines during the past ten years have averaged $9,710,389 a year; and an average of $3,192,700 has been derived annually from the sale of its cards. These facts, and others, which we do not stop to enumerate, can leave no doubt that the effect of the condition in appellant's leases "may be to substantially lessen competition," and that it tends to create monopoly, and has in fact been an important and effective step in the creation of monopoly.

2. On the trial appellant offered to prove its ownership of patents which, it asserts, give it a monopoly of the right to manufacture, use and vend the cards, separately, and in combination with its sorting and tabulating machines, of which, it insists, they are a part. It argues that the condition of its leases is lawful because it does not enlarge the monopoly secured by the patents, and that the trial court erred in refusing to consider appellant's patent monopoly as a defense to the suit.

Appellant's patents appear to extend only to the cards when perforated, and to have no application to those which the lessees purchase before they are punched. The contention is thus reduced to the dubious claim that the sale of the un-punched cards is a contributory infringement of the patents covering the use of perforated cards separately and in combination with the machines. See *Carbice Corporation* v. *American Patents Development Corp.*, 283 U. S. 27; *Motion Picture Patents Co.* v. *Uni-*

versal *Film Mfg. Co.,* 243 U. S. 502; *McGrath Holding Corp.* v. *Anzell,* 58 F. (2d) 205; cf. *Leeds & Catlin Co.* v. *Victor Talking Machine Co.,* 213 U. S. 325.

But we do not place our decision on this narrow ground. We rest it rather on the language of § 3 of the Clayton Act which expressly makes tying clauses unlawful, whether the machine leased is "patented or unpatented." The section does not purport to curtail the patent monopoly of the lessor or to restrict its protection by suit for infringement. But it does in terms deny to the lessor of a patented, as well as of an unpatented machine, the benefit of any condition or agreement that the lessee shall not use the supplies of a competitor. The only purpose or effect of the tying clause, so far as it could be effectively applied to patented articles, is either to prevent the use, by a lessee, of the product of a competitor of the lessor, where the lessor's patent, *prima facie,* embraces that product, and thus avoid judicial review of the patent, or else to compel its examination in every suit brought to set aside the tying clause, although the suit could usually result in no binding adjudication as to the validity of the patent, since infringement would not be in issue. The phrase "whether patented or unpatented" would seem well chosen to foreclose the possibility of either alternative.

When Congress had before it the bill which became § 3 of the Clayton Act, it was familiar with the decision of this Court in *Henry* v. *A. B. Dick Co.,* 224 U. S. 1, and with the contentions made in *United States* v. *United Shoe Machinery Co.,* 247 U. S. 33, then pending before this Court—cases in which it was held that a tying clause could lawfully be extended to unpatented supplies for a leased patented machine. Cong. Rec., Vol. 51, Part 14, 63rd Cong., 2d Sess., 14,089 ff.; see Henderson, The Federal Trade Commission, 30. One purpose of § 3 undoubtedly was to prevent such use of the tying clause. *United Shoe*

*Machinery Co.* v. *United States,* 258 U. S. 451. But the debates on § 3, on the floor of the Senate, disclose that it was well known to that body that one of the contentions in the pending cause, *United States* v. *United Shoe Machinery Co.,* 247 U. S. 33, was that it was permissible, in any circumstances, for a lessor to tie several patented articles together. They show that the proponents of the bill were as much concerned that that practice should be prohibited as that the tying of non-patented to patented articles should be ended. Cong. Rec., Vol. 51, Part 14, 63rd Cong., 3d Sess., 14275. The phrase, "whether patented or unpatented" as used in § 3 is as applicable to the one practice as to the other. It would fail of the purpose which it plainly expresses if it did not operate to preclude the possibility of both, and to make the validity of the tying clause a matter to be determined independently of the protection afforded by any monopoly of the lessor. Such, we think, must be taken to be the effect of the section unless its language and history are to be disregarded. Under its provisions the lawfulness of the tying clause must be ascertained by applying to it the standards prescribed by § 3 as though the leased article and its parts were unpatented.

3. Despite the plain language of § 3, making unlawful the tying clause when it tends to create a monopoly, appellant insists that it does not forbid tying clauses whose purpose and effect are to protect the good will of the lessor in the leased machines, even though monopoly ensues. In support of this contention appellant places great emphasis on the admitted fact that it is essential to the successful performance of the leased machines that the cards used in them conform, with relatively minute tolerances, to specifications as to size, thickness and freedom from defects which would affect adversely the electrical circuits indispensable to the proper

operation of the machines. The point is stressed that failure, even though occasional, to conform to these requirements, causes inaccuracies in the functioning of the machine, serious in their consequences and difficult to trace to their source, with consequent injury to the reputation of the machines and the good will of the lessors. There is no contention that others than appellant cannot meet these requirements. It affirmatively appears, by stipulation, that others are capable of manufacturing cards suitable for use in appellant's machines; and that paper required for that purpose may be obtained from the manufacturers who supply appellant. The Remington Rand company manufactures cards suitable for its own machines, but since it has been barred by the agreement with appellant from selling its cards for use in appellant's machines, its cards are not electrically tested. The Government, under the provisions of its lease, following its own methods, has made large quantities of the cards, which are in successful use with appellant's machines. The suggestion that without the tying clause an adequate supply of cards would not be forthcoming from competitive sources is not supported by the evidence. "The very existence of such restrictions suggests that in its absence a competing article of equal or better quality would be offered at the same or at a lower price." *Carbice Corporation* v. *American Patents Development Corp., supra*, 32, Note 2, quoting Vaughan, Economics of Our Patent System, 125, 127. Appellant's sales of cards return a substantial profit and the Government's payment of 15% increase in rental to secure the privilege of making its own cards is profitable only if it produces the cards at a cost less than 55% of the price charged by appellant.

Appellant is not prevented from proclaiming the virtues of its own cards or warning against the danger of using, in its machines, cards which do not conform to the

necessary specifications, or even from making its leases conditional upon the use of cards which conform to them. For aught that appears such measures would protect its good will, without the creation of monopoly or resort to the suppression of competition.

The Clayton Act names no exception to its prohibition of monopolistic tying clauses. Even if we are free to make an exception to its unambiguous command, see *United States* v. *United Shoe Machinery Co.*, 264 Fed. 138, 167;[1] *Auto Acetylene Light Co.* v. *Prest-O-Lite Co.*, 276 Fed. 537; *Pick Manufacturing Co.* v. *General Motors Corp.*, 80 F. (2d) 641; cf. *Radio Corporation* v. *Lord*, 28 F. (2d) 257, we can perceive no tenable basis for an exception in favor of a condition whose substantial benefit to the lessor is the elimination of business competition and the creation of monopoly, rather than the protection of its good will, and where it does not appear that the latter can not be achieved by methods which do not tend to monopoly and are not otherwise unlawful.

*Affirmed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.

---

[1] In this case the Government sought no review of the determination of the district court that the tying clause was valid so far as it requires lessees to purchase of the lessor supplies and parts of the leased machines. See *United Shoe Machinery Co.* v. *United States*, 258 U. S. 451.