## STANDARD REGISTER CO. v. AMERICAN SALES BOOK CO., Inc.

### Equity Nos. 2078, 2155, and Civil Action No. 200.

District Court, W. D. New York.
July 17, 1944.

476

Bean, Brooks, Buckley & Bean, of Buffalo, N. Y. (Edwin T. Bean, of Buffalo, N. Y., Marston Allen, of Cincinnati, Ohio, and Samuel E. Darby, Jr., of New York City, of counsel), for plaintiff.

Franchot, Runals, Cohen, Taylor & Rickert, of Niagara Falls, N. Y. (Stephen H. Philbin and William J. Barnes, both of New York City, of counsel), for defendant.

KNIGHT, District Judge.

These are three suits by Standard Register Company against American Sales Book Company, Inc., for alleged infringement of patents owned by the plaintiff. The answer in each case presents a defense of unclean hands in that the plaintiff has misused its patents to aid its business in unpatented articles. Upon stipulation it was ordered that the three cases be consolidated for purposes of trial and that there be a separate trial on the defense hereinbefore stated, pursuant to Rule 42 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Both the plaintiff and the defendant manufacture and sell business forms, or so-called manifold stationery, such as vouchers, invoices, bills of lading and the like. Such stationery is used in typewriters, teletype machines, billing machines and other types of business machines. The stationery is devised in the form of long continuous strips of paper for making original records and if copies are required, copy sheets, with interleaved carbon paper between overlying strips. Each sheet of the strip has marginal feed holes along one or both side margins. The sheets are assembled and folded together in zig-zag packs for use and shipment. This is the type of stationery with which we are concerned here. It is stipulated that for the purpose of the foregoing defense such stationery forms are not patented.

Both the plaintiff and the defendant supply different feeding devices to co-operate with the margin feed holes to propel the paper through the machine and secure the right alignment. Plaintiff's feeding device is a platen attachable to a typewriter, or other above-stated machines, with a series of retractable pins at each and for engaging the marginal holes along the edges of the forms. This platen fits into a typewriter, tabulator or other type of similar machine in place of a roller. The patents in suit relate to this platen, and it is referred to herein as a "registrator platen." The feeding device of the defendant is in the nature of an attachment which is added to the machine without disturbing the platen already in the machine, and defendant's attachment is usable on the machine with the plaintiff's device by the adjustment of the platen so that the pins are inoperative. While the plaintiff's platen was designed to meet the specific physical characteristics of the plaintiff's stationery, and it does not appear that the stationery of any other company has been used or attempted to be used in plaintiff's device, it is apparent that it is physically possible for any one to copy the form stationery of the plaintiff and use plaintiff's platen without alteration. Plaintiff does not sell these platens to its form customers but "loans" and "licenses" them to customers upon an agreement, among other things, containing this provision:

"This License shall continue only so long as the User purchases from the Owner or its authorized representatives, * * * marginally punched stationery or continuous form material for use on the devices licensed hereby in lots totalling minimum gross price of Fifty ($50.00) Dollars per order, and not less than Fifty ($50.00) Dollars per year for each feeding device licensed hereunder and only so long as no continuous form material or marginally punched forms obtained elsewhere than

from Owner and/or its authorized representatives is used by User with the licensed property. But nothing herein shall be deemed to restrict the User in the purchase of continuous manifolding form material from others than Owner, or to limit the User in the purchase, lease or license of feed aligning devices of others excepting that no license is to be implied hereby under the patents referred to in Schedule One as to such products of others."

Defendant and other competitors of plaintiff, engaged in the manufacture of form stationery, "license" or "loan" their feeding devices under a comparable provision. The reasons for this are obvious, but they have no bearing on the question of the right to limit the use of the patented platen to the particular form stationery manufactured or provided by it.

Plaintiff seeks to distinguish the effect of a "loan" or "lease" agreement from a "sale." It says that if it had sold the patent and tried to restrict its use, that would have been illegal, because when a device is sold the purchaser has the right to use it for anything he wants and do anything he wants with it, but where it "loans" or "leases" a patented article, as here, the customer can use it as long as he uses material supplied by the plaintiff.

It seems to me that the plaintiff makes a distinction without difference in its effect. The rule stated in Carbice Corp. v. American Patents Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819, and followed in International Business Mach. Corp. v. United States, 298 U.S. 131, 132, 56 S.Ct. 701, 80 L.Ed. 1085; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; Mercoid v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268; American Lecithin Co. v. Warfield Co., 7 Cir., 105 F.2d 207; and other cases, is applicable here. The question is whether the limitation in the license agreement constitutes such a misuse of the patented device as to promote the sale of the stationery, and it makes no difference whether it is a sale, an exclusive license or a loan or lease. The customer here in order to retain plaintiff's device is required to buy plaintiff's stationery.

Whether one sells a patented device and seeks to limit its use to an unpatented product of the patentee, or whether one leases a patented device and makes the lease dependent on the use of leasor's unpatented material makes no difference in the light of the decisions of the Supreme Court since Henry v. A. B. Dick Co., 224 U.S. 1, 32 S.Ct. 364, 56 L.Ed. 645, Ann.Cas.1913D, 880, was overruled by Motion Picture Patents Co. v. Universal Film Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Ann.Cas.1918A, 959. That court has gone a long way in limiting the scope of a patent since the decision in Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 6 Cir., 77 F. 288, 35 L.R.A. 728 (known as the Button-Fastener case) and since Mr. Justice Holmes said in the above-cited Motion Picture case [243 U.S. 502, 37 S.Ct. 422]: "I cannot understand why he (patentee) may not keep it out of use unless the licensee, or, for the matter of that, the buyer, will use some unpatented thing in connection with it."

Certain of the material facts in United States v. International Business Mach. Corp., D.C., 13 F.Supp. 11, 18, affirmed 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085, supra, are comparable with those here. The lease in question there read:

"In consideration of the rental paid for the machines and conditioned upon the purchase of Tabulating Cards * * * this Company hereby gives you a non-assignable lease to use the above named machines at the place and for the work aforesaid, but such license and any contract based upon the acceptance of this proposition may be terminated forthwith by any failure to pay when due the aforesaid rental of the machines, * * *."

Plaintiff places reliance upon the case of Federal Trade Commission v. Sinclair Refining Co., 261 U.S. 463, 43 S.Ct. 450, 67 L.Ed. 746, and claims that it is directly applicable to the present facts. Plaintiff there contended that both the Federal Trade Commission Act, 38 Stat. 717, 15 U.S.C.A. § 41 et seq., and the Clayton Act, 38 Stat. 730, were violated in that competition was stifled and suppressed and competitors injured. This was not a patent suit. The court held that the Federal Trade Commission could not compel competitors to a common level, interfere with ordinary business methods or restrict competition by arbitrary standards. The facts are quite dissimilar from those here, and this case was distinguished in International Business Mach. Corp. v. United States, supra.

The plaintiff asserts that the foregoing are cases wherein "improper use of

478

a patent has been defined as extending or attempting to extend a monopoly to something the patent does not cover," and the way it is so used is "to grant rights under it or threaten to sue or to sue for infringement of it to accomplish the improper purpose." Plaintiff further asserts that in each of these cases patent infringement was refused upon the doctrine of "improper use" because of the compulsion imposed upon the licensee or prospective licensee by the provision. The cases hereinbefore cited definitely hold that an owner of a patent cannot exact as a condition of the license that unpatented material used in connection with his invention shall be purchased only from the licensor. That is precisely what the plaintiff here does. It says to its licensee or loanee that he can use the plaintiff's device only so long as you pay the rental and use plaintiff's manifold stationery. In the instant case lessee is compelled to purchase plaintiff's stationery in order to use plaintiff's platen. His field of purchase is limited.

As will be noted, plaintiff's leasing agreement provides that nothing therein "shall be deemed to restrict the User in the purchase of continuous manifolding form material from others than Owner, or to limit the User in the purchase, lease or license of feed aligning devices of others * *." It is claimed that this provision eliminates "any possibility of even the thought—much less the claim—of compulsion, * * *." It is perfectly obvious that any provision purporting to prevent the licensee from purchasing form material from others or purporting to limit the user in purchasing, leasing or licensing feeding devices of others, as a consideration for the agreement, would be illegal. It does not seem that this clause in any way affects the provisions of the immediately preceding clauses.

The license agreement contains the following patent estoppel paragraph:

"The User accepts this licensed property and agrees that the licensed property is the property of the said Owner and that the title to it is and shall remain in said Owner, and agrees not to directly or indirectly contest the validity of the Letters Patent of the Owner covering the licensed devices or material or both; or of patents subsequently obtained by the Owner covering the same, of which notice is given to the User; this obligation to apply the life or term of said patents; * * *."

 It is the defendant's claim that these estoppel provisions constitute misuse of plaintiff's patents to further its sale of unpatented forms. The question of the effect of an agreement that the lessee will not contest the validity of the patents (which he holds under lease or license) has been frequently considered by the courts. It seems well settled that one accepting a license may lawfully agree not to contest the patent during the term of the license. Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999; Eskimo Pie Corp. v. National Ice Cream Co. 6 Cir., 26 F.2d 901; United States v. Wayne Pump Co., D.C., 44 F.Supp. 949; United Shoe Machinery Co. v. Caunt, C.C., 134 F. 239; Philadelphia Creamery Supply Co. v. Davis & Rankin, etc., C.C., 77 F. 879; Dunham v. Bent, C.C., 72 F. 60. The only doubt that would seem to arise as respects the validity of this portion of the agreement is the provision with respect to "patents subsequently obtained by the Owner." Limited as it is to patents subsequently obtained covering the same (license devices) under the authorities above cited, the provision seems to me to be legal.

The three suits are dismissed.

Findings of Fact and Conclusions of Law may be submitted for signature.