### HOAGUE–SPRAGUE CORPORATION v. BIRD & SON, Inc.

#### Civ. A. No. 7067.

United States District Court
D. Massachusetts.

April 6, 1950.

George P. Dike, George P. Towle, Jr., Dike, Calver & Porter, all of Boston, Mass., for plaintiff.

Kenway, Jenny, Witter & Hildreth, Melvin R. Jenney, Richard R. Hildreth, Richard Cotter, all of Boston, Mass., for defendant.

**McCARTHY, District Judge.**

Hoague-Sprague Corporation, doing business at Lynn, Massachusetts, and Bird & Son, Inc., doing business at Walpole, Massachusetts, are competitors in the shoe box-blank industry. Both supply shoe manufacturers or shoe box manufacturers with flat box-blanks which are then formed into a completed shoe box. This latter operation is usually effected by means of box-forming machines which either automatically or semi-automatically bend, glue, form and fold the boxes, or perform certain of those functions.

Hoague-Sprague Corporation alleges that it is the owner of Letters Patent of the United States No. 2,186,977, originally granted on January 16, 1940, on the application of one Cutler D. Knowlton and assigned by him to Hoague-Sprague Corporation. This "Knowlton patent" embraces certain improvements in box-making.

It appears that it was the practice of both Hoague-Sprague Corporation and Bird & Son, Inc., to lease box-making machines to shoe or shoe box manufacturers. The manufacturers would then purchase box-blanks to be formed upon these leased box-making machines. It is evident that the real profit for both corporations from these transactions was derived from the sale of blanks and not from the leases themselves. Competition in the vending of blanks was, therefore, keen.

On September 26, 1947, Hoague-Sprague Corporation (hereinafter sometimes called plaintiff) filed a complaint alleging that Bird & Son, Inc. (hereinafter sometimes called defendant) was infringing certain claims [1] of the "Knowlton patent" in making, using, selling and supplying so-called "trigger-type" box-making machines. The complaint also included a prayer for reformation of a certain license agreement into which the parties had previously entered [2].

1. Claims 8, 21, 26, 33, and 50.

2. Through a mistake of both parties or by a typographical error the word "Licensor" was used in place of the word "Licensee" in line 11 of the last paragraph on page 1 of the agreement. The defendant has agreed that the license may be reformed and an order will be issued directing such reformation. Therefore, this aspect of the case is not important.

Defendant filed its answer October 16, 1947. This pleading was in the form of the usual answer in a patent case, denying validity and infringement.

On April 13, 1948, defendant was allowed to amend its answer to allege that plaintiff was unjustifiably and illegally attempting to use the "Knowlton patent" to control commerce in materials not covered by the patent, viz., box-blanks, and that such practices were contrary to public policy, constituting a misuse of the patent which rendered the patent unenforceable.

Plaintiff made the next move by amending its complaint on December 27, 1948, to charge the defendant with violation of the Clayton Act, 15 U.S.C.A. § 14. Plaintiff was required to file a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The substance of the amendment to the complaint is an assertion that defendant, by means of a clause in its leasing agreements, prevented competitors from selling box-blanks to be used on defendant's machines. Defendant proceeded to take depositions of Charles F. Sprague, plaintiff's vice-president, and J. Morton Hoague, plaintiff's sales manager. A number of exhibits were introduced in evidence during the taking of the depositions and furnished by plaintiff's counsel at the request of defendant's counsel. Interrogatories were propounded by defendant and answered by plaintiff.

On the basis of answers to these interrogatories, admissions and the depositions, defendant moved for summary judgment. On the same day plaintiff's interrogatories were served. Two days later defendant filed a motion to suspend action on plaintiff's interrogatories. This motion was heard by me and granted; the motion for summary judgment was set for an immediate hearing and argued at some length. Plaintiff was then given an opportunity to secure affidavits and subsequently did file twelve affidavits in support of its position in opposition to the motion.

The motion for summary judgment is aimed at both the original complaint of patent infringement and the subsequent assertion of violation of the Clayton Act.

The gist of defendant's argument in favor of its motion is that there is no genuine issue as to any material fact; that plaintiff is precluded from maintaining the patent infringement suit because its leases and its practices thereunder are illegal and constitute a misuse of the patent; that the Clayton Act charge is unfounded and barred by laches, unclean hands and the statute of limitations.

■ Plaintiff does not dispute the established legal proposition that a misuse of the patent in suit by the patentee may, and should, bar the latter from relief in a court of equity. Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959; Carbice Corp. of America v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L. Ed. 376. It contends, however, that there is a genuine issue of material fact as to the nature of its business practices, asserting that its "quota policies" are not illegal and, furthermore, that any portions of its leases which could be found to be objectionable were discontinued as of June 1, 1949. It also claims that there is a genuine factual issue involved on the question of the laches and limitations.

■ Summary judgment should not be allowed if there is a genuine issue of material fact proper for trial. Peckham v. Ronrico Corp., 1 Cir., 171 F.2d 653. The duty of the court is to determine, not what the facts are, but whether such an issue of fact exists, United States v. Curtiss Aeroplane Co., 2 Cir., 147 F.2d 639; American Optical Co. v. New Jersey Optical Co., D.C.Mass., 58 F.Supp. 601, and all doubts as to the existence of such an issue must be resolved against the party moving for a summary judgment. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016, 1018.

■ In the case at bar, after careful deliberation I have determined that there are such triable issues of fact involved. I con-

clude that there is a bona fide dispute as to the regularity of plaintiff's business practices and as to the injury sustained by plaintiff as a result of the alleged Clayton Act violations. While the deposition of Mr. Sprague reveals a considerable delay in bringing this action under the Clayton Act, plaintiff should have an opportunity to explain its seeming laches. I do not consider the deposition as conclusive in this matter or so persuasive that I should dismiss the anti-trust complaint on that ground alone without a hearing. As to the statute of limitations, suffice it to say that plaintiff vigorously contends that it has suffered injury within the statutory period; this presents a question of fact and should be determined upon the evidence.

A more difficult problem is presented in regard to plaintiff's leases. The Hoague-Sprague leases involved in this action contain a paragraph No. 7 which reads as follows: "The lessee shall pay Hoague-Sprague for the use of said machine at the rate of one dollar ($1.00) for each and every one thousand (1,000) pieces or parts of blanks for shoe boxes operated upon by said machine, provided, however, that in respect to pieces or parts of blanks for shoe boxes *purchased by the Lessee* from Hoague-Sprague at prices from time to time established by Hoague-Sprague therefor, which prices shall include payment for the use of said machine, *the Lessee shall not be required to pay for operating upon said pieces or parts* of blanks by the use of said machine under the terms of this agreement." (Emphasis supplied.) Defendant insists that this paragraph constitutes a "tying clause" embodying the type of "leverage" condemned in Leitch Mfg. Co. v. Barber Co., supra, see Judge Magruder's concurring opinion in B. B. Chemical Co. v. Ellis, 1 Cir., 117 F.2d 829, 836, affirmed

314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367, and that as a matter of law plaintiff is guilty of a misuse of its patent and, as respects the Clayton Act complaint, is in court with unclean hands. From which it asserts that plaintiff should have no standing to seek relief from patent infringement or to prosecute an anti-trust action.

■ There is much force to defendant's argument [3]— "* * * the practice of combining the price of a royalty and of the product in the same unit without separation tends to promote a monopoly in the product * * *", Dehydrators Ltd. v. Petrolite Corp. Ltd., 9 Cir., 117 F.2d 183, 187; see also Oxford Varnish Co. v. Ault & Wiberg Corp., 6 Cir., 83 F.2d 764, and Barber Asphalt Corp. v. La Fera Grecco Contracting Co., 3 Cir., 116 F.2d 211—and I might well rule in its favor as to the clause in dispute if it were essential to determine its legality.

As regards the Clayton Act and the defense of unclean hands: notwithstanding the language of the final sentence [4] of paragraph No. 7, which does not lessen or substantially modify the restrictive effect of the entire paragraph when read as a whole, these Hoague-Sprague leases seem not essentially unlike certain of the International Business Machine Corporation leases condemned as direct violations of Section 3 of the Clayton Act, 15 U.S.C.A. § 14, wherein the lessor required its lessee, the United States, to pay increased rentals for leased machines when products not purchased from the lessor were used therewith. United States v. International Business Machines Corp., D.C., 13 F.Supp. 11, affirmed 298 U.S. 131, 56 S.Ct. 701, 80 L. Ed. 1085.

■ Plaintiff, however, has alleged that since June 1, 1949, its leases no longer call for a royalty as in the quoted paragraph

3. Defendant points out that the amount of the "payment for the use of said machine" (para. No. 7, Hoague-Sprague lease quoted supra) is not stated in the lease nor is it separately billed to the customer (Hoague, R. 114, Qs. 57–59); the same price for blanks is charged to those customers who do not have Hoague- Sprague machines (Hoague, R. 118, Q. 91).

4. "It is understood and agreed, however, that the Licensee shall not be required and undertakes no obligation to purchase any pieces or parts of blanks operated upon by said machines from said Hoague-Sprague * * *."

No. 7, but rather for straight monthly rental. Assuming, arguendo, but not deciding, that the Hoague-Sprague leases prior to June 1, 1949, contained paragraphs or clauses which were objectionable as a misuse of a patent in suit, if Hoague-Sprague is able to show that it has fully abandoned such clauses or practices which restrained or tended to restrain competition in the sale of unpatented articles and that the effects and consequences of such clauses or practices have been fully dissipated, then this court may entertain its suit for infringement. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 493, 788, 62 S.Ct. 402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 498, 62 S.Ct. 406, 86 L.Ed. 367; Hartford-Empire Co. v. United States, 323 U.S. 386, 419, 65 S.Ct. 373, 89 L.Ed. 322. Whether such a satisfactory purge has taken place is, of course, largely a question of fact. Mere allegation in an affidavit that such is the fact is not controlling. This is a question, then, which must be determined at a trial on the merits. Its existence here effectively bars a summary judgment; for even if the Hoague-Sprague leases containing the quoted paragraph No. 7 are objectionable as embodying an improper leverage I am of the opinion that plaintiff is entitled to an opportunity to demonstrate to the court that such leases have been abandoned and that a satisfactory purge has been effected; also to show that the defense of unclean hands is no longer applicable, at least as to its right to seek injunctive relief. The situation calls for evidence on the issue, not summary judgment. Westinghouse Electric Corp. v. Bulldog Electric Products Co., 4 Cir., 179 F.2d 139, 146.

Moreover, viewing the instant action in its broader aspects, it would seem that the case is one which is better decided after a full hearing on all the issues involved. See Paul E. Hawkinson Co. v. Dennis, 5 Cir., 166 F.2d 61, 63; Westinghouse Electric Corp. v. Bulldog Electric Products Co., supra.

For these reasons defendant's motion for summary judgment must be denied.

Since the defendant agrees that the word "Licensor" in line eleven (11) of the last paragraph of the first page of the license entered into by Hoague-Sprague and Bird & Son on June 3, 1942, was evidently a typographical error and that said word "Licensor" should be changed to "Licensee", an appropriate order reforming, correcting and conforming the said license to the true intent of the parties may be submitted to the Court by plaintiff for signature.