**GENERAL MOTORS CORPORATION, Plaintiff,**

v.

**GIBSON CHEMICAL & OIL CORPORATION and Lee J. Roth, Defendants.**

**No. 85 CV 1020.**

United States District Court, E.D. New York.

June 10, 1987.

Parker, Auspitz, Neeseman & Delehanty, P.C., New York City (Mark P. Ladner, Kim T. Landsman, of counsel), for plaintiff.

Robert G. DelGadio, Garden City, N.Y. (Harry R. Dreizen, of counsel), for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff moves for summary judgment dismissing defendants' counterclaim alleging violation of the antitrust laws. For the reasons stated below, the motion is granted.

### Facts

This is an action for infringement of the trademark "Dexron." Plaintiff General Motors Corporation ("GM") has registered the mark, which identifies automatic transmission fluid meeting certain quality standards set by GM. The fluid—currently sold as "Dexron II"—is produced and sold by GM and by other manufacturers, who may use the Dexron mark if they participate in a GM licensing program.

A manufacturer who wishes to join the program must submit a sample of its fluid for testing. If the sample meets GM specifications, which are freely available, GM issues the manufacturer a license to use the Dexron name and an identification number that must appear on every can. GM periodically tests samples to make sure that its licensees continue to meet quality standards. It receives no royalties on sales of Dexron fluid by other manufacturers. GM administers the licensing program, at a yearly cost of $100,000, to help ensure proper service and maintenance of its cars and trucks.

GM provides with its vehicles a limited warranty covering repairs due to defects in material or workmanship. The warranty does not cover damage caused by improper

maintenance, and specifically states that GM is not responsible for repairs necessitated by the owner's failure to use fuel, oil or lubricants recommended in the owner's manual. The manual, in a section entitled "Automatic Transaxle Fluid Recommendations," states that the owner should use only Dexron II fluid.

Sometime in 1984, GM investigators began to suspect that Gibson Chemical & Oil Corporation and its president, Lee J. Roth (together, "Gibson"), were selling counterfeit Dexron II automatic transmission fluid. Although its cans bore the Dexron mark, Gibson had never obtained a license from GM, and the purported identification number was improperly displayed. Accordingly, on March 18, 1985, GM sought and received from this Court a temporary restraining order and an *ex parte* seizure order under the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116 and 18 U.S.C. § 2320.

After a hearing on March 28 and 29, 1985, this Court confirmed the order of seizure and entered a preliminary injunction restraining Gibson's manufacture or sale of fluid bearing the Dexron trademark. Gibson appealed to the Second Circuit, which affirmed the issuance of the preliminary injunction and held that the temporary restraining and seizure order was not appealable. *See General Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105 (2d Cir.1986).

Gibson raised as a defense at the hearing and as a counterclaim in its answer that GM's use of its Dexron mark constitutes an illegal tying arrangement, *see* Sherman Act, 15 U.S.C. §§ 1, 2; Clayton Act, 15 U.S.C. §§ 14, 15, 26; Lanham Trade-Mark Act, 15 U.S.C. § 1115(b)(7), in that purchasers of GM cars are coerced into buying automatic transmission fluid manufactured or licensed by GM, with a resultant anticompetitive effect in the market for such fluid. Gibson has described the alleged

arrangement in various ways. Its counterclaim asserts that the "tying" product is the vehicle and the "tied" product is the transmission fluid. At the hearing Gibson seemed to claim that the tying product is the repair or warranty service provided by GM to buyers of its vehicles. In the Second Circuit, Gibson stated that GM had "illegally tied the purchase of its automobiles, or at the least the warranty upon the automobile, with the forced purchase of 'Dexron' automatic transmission fluid." Finally, it now asserts that the tying product is "a new General Motors automobile and its warranty" (Defendants' Memorandum of Law at 87).

*Discussion*

As the Second Circuit stated in its ruling on the preliminary injunction, "[a]n unlawful tying arrangement ... conditions the sale of lease of one product on the purchase or lease of another separate product from the same seller." *Gibson, supra,* 786 F.2d at 110.

It is the forced purchase of a second distinct "tied" product with the desired purchase of a dominant "tying" product that reduces competition in the "tied" market. *See Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). Five elements of a tying arrangement must exist in order for there to be an antitrust violation: (1) two distinct products; (2) evidence of coercion; (3) sufficient economic power in the tying product market; (4) anticompetitive effect in the tied market; and (5) involvement of a not insubstantial amount of interstate commerce in the tied market. *Yentsch v. Texaco, Inc.,* 630 F.2d 46, 56–57 (2d Cir.1980). *Power Test Petroleum Distrib., Inc. v. Calcu Gas, Inc.,* 754 F.2d 91, 96 (2d Cir. 1985).

■ Gibson's claim is insufficient in several respects.[1] As noted above, an anti-

**1.** This discussion assumes that the tying product is the automobile or the "automobile/warranty package" (Defendants' Memorandum of Law at 9–10). If the tying product is the warranty alone, the claim fails because, among other reasons, there is no separate product market for warranties. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 19–21, 104 S.Ct. 1551, 1562–63, 80 L.Ed.2d 2 (1984) (tying claim requires two separate product markets, one for

trust violation exists where the buyer of the tying product is required to purchase the tied product "from the same seller." *Gibson, supra,* 786 F.2d at 110. Even if the other requisites were met, there would be no illegal tying arrangement here because the consumers "coerced" into buying Dexron fluid are in no way coerced into buying it from GM. They remain free to obtain the product from one of the many other companies that make it.[2] *See Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 712 (11th Cir.1984) (illegal tie only where buyer coerced into buying tied product from entity in which seller of tying product has financial interest).

■ Similarly, Gibson cannot meet the requirement that there be an anticompetitive effect in the market for the tied product. GM admittedly encourages the use of Dexron, but because the fluid is available from a number of manufacturers, and because any manufacturer may obtain a license to produce it, GM's conduct has no anticompetitive effect. *See Shop & Save Food Markets, Inc. v. Pneumo Corp.,* 683 F.2d 27, 30–31 (2d Cir.) (no illegal tying where buyer can buy from seller's competitors in allegedly tied market), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982); *United States v. Mercedes-Benz of N. Am., Inc.,* 517 F.Supp. 1369, 1383 (N.D. Cal.1981) (illegal tying claim defeated where allegedly tied product may be obtained from seller of tying product or from approved alternative source).

■ Finally, as the Second Circuit noted, the key element of coercion is missing here: Of course, the sale of a GM automobile is not conditioned on the purchase of Dexron II. GM simply recommends use of

the fluid in its automatic transmissions and cautions that damage to transmissions caused by the use of other fluids may not be covered by the automobile warranty. This manufacturer's recommendation is not the degree of coercion necessary to a tying arrangement. *Gibson, supra,* 786 F.2d at 110.[3] GM imposes no conditions whatsoever on purchasers of its vehicles. It simply warns them that the warranty accompanying the vehicle covers only repairs necessitated by design or manufacturing defects, and does not cover certain other types of repairs, including those occasioned by the use of transmission fluid other than Dexron.

Gibson points to two factual issues that it contends bar the entry of summary judgment for GM on the counterclaim. First, it states that the extent of GM's economic interest in the market for the tied product must be determined. GM is among the sellers of Dexron and therefore certainly has some interest, but the extent of that interest is irrelevant because, as noted above, there is no indication of any anticompetitive effect in the market for the tied product, and there is no coercion to buy the product from GM.

The second factual issue alleged to bar summary judgment is the extent to which GM "den[ies] warranty repairs to automatic transmissions when a non-Dexron fluid has been used by the automobile owner" (Defendants' Memorandum of Law at 11). This issue, too, is irrelevant. Even if we assume that GM *never* repairs damage caused by the use of fluid other than Dexron, coercion simply is not present.

■ Gibson's argument stems from a mischaracterization of the warranty ar-

tying product and one for tied product); *Kelly v. General Motors Corp.,* 425 F.Supp. 13, 18–19 (E.D.Pa.1976) (no product market for automobile warranties exists, and highly unlikely one would arise if car dealers sold warranties separately).

2. The sales of the licensees cannot be attributed to GM because GM gets no royalties from those sales. *See Carl Sandburg Village Condo. Ass'n No. 1 v. First Condo. Dev't Co.,* 758 F.2d 203, 208, 210 (7th Cir.1985).

3. Gibson argues that the Second Circuit's affirmance of the injunction order does not collaterally estop Gibson from contending that coercion exists. Nobody has suggested that that doctrine precludes litigation of the merits of this case. The Court of Appeals' legal conclusions are, however, law of the case, and, like any other precedents of that Court, binding on this Court.

rangement. The purchaser of a GM vehicle receives a warranty covering specific types of repairs. Among the repairs excluded from coverage are those caused by improper maintenance, including the use of non-Dexron fluid. Thus, Gibson is incorrect when it states that the consumer is forced to buy Dexron or "jeopardize[ ] the value of the product he is buying by virtue of the loss of warranty protection" (Defendants' Memorandum of Law at 11). Free repair of damage caused by improper fluid is not part of the warranty protection in the first place, so use of non-Dexron fluid does not result in the "los[s of] a valuable component of the automobile [or automobile/warranty package] originally purchased" (Defendants' Memorandum of Law at 11). Thus, the extent to which GM sticks to its word and declines to repair damage caused by the use of fluid other than Dexron is irrelevant, because this conduct would not constitute coercion in any event.

Thus, because the factual matters identified by Gibson are not material, *see Applegate v. Top Assocs. Inc.*, 425 F.2d 92, 97 (2d Cir.1970), and because Gibson's illegal tying claim is insufficient as a matter of law, summary judgment for GM on that issue is proper. The counterclaim is dismissed.

SO ORDERED.